**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| Transamerica Life Insurance Company, | ) ) ) | No. 2:24-cv-00379-ROS |
| Plaintiff, | ) ) | |
| vs. | ) ) | Phoenix, Arizona August 6, 2024 |
| Tayjalaya S. Williams, et al., | ) ) ) | 10:04 a.m. |
| Defendants. | ) ) | |
| _____ | ) | |

**BEFORE:   THE HONORABLE ROSLYN O. SILVER, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**STATUS CONFERENCE**

**APPEARANCES:**
For the Plaintiff:
    LEWIS ROCA LLP
    By:  **Mr. Andrew Jacobsohn, Esq.**
    201 E Washington St., Ste. 1200
    Phoenix, AZ 85004

For the Defendant:
    **Ms. Tayjalaya S. Williams, pro se**
    2240 S Elks Ln., Unit 13
    Yuma, AZ 85364

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                    **P R O C E E D I N G S**

2              COURTROOM DEPUTY:  This is case number CV 2024-0379,

3    Transamerica Life Insurance Company versus Tayjalaya S.

4    Williams.  This is the time set for a status conference.

5              Will the parties please announce for the record,

6    beginning with plaintiff's counsel.

7              MR. JACOBSOHN:  Hi.  Good morning, Your Honor.  Andrew

8    Jacobsohn here on behalf of Transamerica.

9              THE COURT:  And, I'm sorry, who is it?  Is it

10   Mr. Jacobsohn?

11             MR. JACOBSOHN:  Yes, Your Honor.

12             THE COURT:  Mr. Jacobsohn.  All right.

13             Defendant.

14             Robert.

15             MS. WILLIAMS:  Defendant Williams.

16             THE COURT:  And you are without counsel, right?

17             MS. WILLIAMS:  Without counsel, yes, pro se.

18             THE COURT:  All right.  Mr. Jacobsohn, I have known

19   you and Mr. Bressler for a long time, and I am surprised that

20   you both, or one of you, whoever it was responsible for this

21   case, violated three orders of this Court, with a promise of

22   sanctions, including contempt.

23             What am I missing here?

24             MR. JACOBSOHN:  My apologies, Your Honor.  Our

25   understanding was that our client was dismissed from this

1  matter pursuant to your order on April 24th which stated that

2  upon deposit of the policy proceeds with the court, we would be

3  discharged -- our client would be discharged from all further

4  proceedings in this matter and any liability arising from the

5  policy.  We deposited the check on April 30th.

6      THE COURT:  So why didn't you send a response to my

7  order?  You're still a party.

8      The order went to you, didn't it?

9      MR. JACOBSOHN:  Yes.

10     THE COURT:  Okay.  So you didn't --

11     MR. JACOBSOHN:  My understanding --

12     THE COURT:  You didn't think it appropriate at least

13 to call and confirm that you didn't have to appear when you

14 received that order?  And you are still a party.  And that is

15 primarily because the funds, yes, have been deposited, and you

16 don't have any liability for those funds, but you are still the

17 lawyer in this case.  So tell me how I should excuse you.

18     MR. JACOBSOHN:  I -- I -- I'm sorry, Your Honor, my --

19 again, my understanding was that pursuant to your order on

20 April 24th, our client was discharged from all liability and

21 all further proceedings in the matter.  It wasn't just from

22 liability, it was further proceedings.

23     THE COURT:  Well, then you got an order though, two

24 orders, didn't you?  Didn't you think -- and they came to you,

25 because you're still the plaintiff.  I haven't dismissed you.

1    So didn't that raise a question about whether or not you should

2    be here or you should have filed something that indicated that

3    you thought you didn't have to appear in any proceedings?

4        MR. JACOBSOHN:  Yes, Your Honor.  And I called the

5    Court this morning to confirm that.

6        THE COURT:  I'm sorry.  Say that again.

7        MR. JACOBSOHN:  Your Honor, I -- I called your

8    chambers this morning to confirm that.

9        THE COURT:  Okay.  On the morning of the hearing.  So

10   let me get off this issue now.  But Mr. Jacobsohn and

11   Mr. Bressler, as I said, I've known you for a long time, once

12   you receive an order, you are to contact the Court if you think

13   you are excused.

14       And I asked for, in that order, a joint status report

15   without saying you are no longer a plaintiff.  And if you

16   thought you were no longer a plaintiff and didn't have to be

17   here, I should have received something, clear?

18       MR. JACOBSOHN:  Yes, Your Honor.

19       THE COURT:  All right.  And why do you think I need

20   you here for this hearing?

21       MR. JACOBSOHN:  Well, Your Honor, I imagine to discuss

22   the proceedings and what's going on.

23       THE COURT:  Well, and you know all the allegations.

24   Of course, you have represented your client.  The money has

25   been deposited.  And you are not to be here for further

1  proceedings in my order, but I issued other orders.  And let me

2  tell you why it's important for you to be here.

3        You have made allegations that Ms. Williams is not the

4  valid beneficiary based on information you have provided.  I'm

5  in a situation here where I have three people, actually, four

6  people who contend they're entitled to the proceeds.

7        Now, you are -- according to the insurance policy, you

8  are required -- or your client is required to pay interest.

9  And I'm sure, Mr. Jacobsohn, you have handled these cases

10  before.  The money is now deposited, so I wanted to know what

11  your position is on whether or not your client is going to have

12  to pay interest.  And I'm sure, knowing you and Mr. Bressler,

13  that you read the responses, that is, the pleadings that were

14  filed by the four defendants, because you raised this -- your

15  client raised this issue in the first place.

16        As I understand it, your client did not provide -- or

17  did not consider Ms. Williams the sole beneficiary, because

18  your client was concerned about the signatures.  Then you are

19  well aware that there was an investigation, and that there were

20  two targets of that investigation, and those targets of that

21  investigation were claiming, allegedly, that they were

22  beneficiaries.

23        Have I said -- have I stated this accurately?

24        MR. JACOBSOHN:  Your Honor, that is generally correct.

25  If I can go back a little bit to something you said earlier

1    that I would like to clarify.

2         Your Honor, you -- I believe you stated that

3    Transamerica has claimed that Ms. Williams is not the valid

4    beneficiary.  I will say that that's not quite accurate, Your

5    Honor.

6         What we have stated is that we are unable to determine

7    who the beneficiary is.  We do not take a position as to

8    whether Ms. Williams or any of the other defendants is or is

9    not the correct beneficiary.

10         THE COURT:  Well, let me -- but I -- is there anything

11    in the papers you filed that indicates that you took the

12    position -- your client took the position that your client was

13    neutral, despite the fact you have provided information that

14    may apply and may indicate that the slayer -- Arizona Revised

15    Statute slayer law applies?  Is that -- am I wrong about that?

16         I'm asking whether or not -- I'm well aware of what

17    the defendants have alleged as potential beneficiaries, but I

18    was also -- my understanding is that your client not only was

19    the signature of concern, but that your client became aware

20    that there was a criminal investigation; is that right?

21         MR. JACOBSOHN:  That's correct, Your Honor.

22         THE COURT:  Okay.  And I understand that from the

23    papers that have been filed.

24         So this hearing is -- Ms. Williams has filed a motion

25    for summary judgment and there has been no response.  And this

1    hearing was scheduled for today, which is my practice of having

2    interim status conferences before I allow motions for summary

3    judgment to be filed.

4           So what is your position on behalf of your client

5    regarding the funds that have been deposited?  Does your client

6    have a position today on whether or not those funds should be

7    distributed and to whom?  And does your client --

8           MR. JACOBSOHN:  Your Honor --

9           THE COURT:  Does your client or you --

10          MR. JACOBSOHN:  I'm sorry.

11          THE COURT:  -- have additional information about this

12   investigation?

13          MR. JACOBSOHN:  Your Honor, our client has no position

14   as to whom the funds should be distributed.

15          Your Honor, this case arose because there were

16   multiple competing claims to the policy.  Transamerica

17   initiated this action, because if it were to, you know, to

18   grant the funds to one of the defendants in the middle of a

19   pending investigation, or, you know, with the other issues that

20   are outlined in our complaint and in our motions, deposited and

21   related relief, Your Honor, if we were to -- on the other hand,

22   if we were to award the funds to one of the claimants and then

23   it turned out that our client had awarded the funds to the

24   wrong claimant pending the conclusion of the investigation or

25   resolution of the other matters, Transamerica, you know, could

1    be subject to liability towards the other defendants.

2         So this action was brought to deposit the money with

3    the Court, allow the defendants to, you know, litigate the

4    matter between themselves as to who was to be entitled to the

5    funds.  And it's our position that it is not Transamerica's

6    place to decide the beneficiary.

7         THE COURT:  So are you -- I think I understand you and

8    I'm not surprised.  Is that if this Court, or some other Court,

9    determined and issued an order and a judgment as to who was

10   responsible, or who was entitled to the funds, making a

11   decision either the slayer statute applied or didn't, and your

12   client still might be subject to liability, because actions

13   would be filed by -- or could be filed by the other potential

14   beneficiaries.

15        Am I right?

16        MR. JACOBSOHN:  Your Honor, I go back to the order on

17   April 24th, Document Number 26 in this matter, which stated,

18   you know, what we've already gone through regarding the, you

19   know, Transamerica being discharged from further proceedings.

20   But the other part of that order was:  Defendants are

21   permanently enjoined from commencing or prosecuting any other

22   suit or action against Transamerica for the collection of the

23   policy benefits -- excuse me, policy benefits payable because

24   of the death of Thomas Retzlaff, and from assigning,

25   transferring, or otherwise disposing of the interest in the

1    policy benefit until further order of this Court.

2          So, Your Honor, from our perspective, we deposited the

3    check with the court on April 30th, that was seven days after

4    that order, and --

5          THE COURT:  Okay.  Let me -- let me ask a question.  I

6    may have misunderstood you.  I understand maybe you were

7    talking initially why you filed it, and I understand is that if

8    you gave the funds to one of the alleged beneficiaries, you

9    could be sued and that's why you brought it in federal court.

10   And you are saying now that you are immune, right?

11         MR. JACOBSOHN:  Yes, Your Honor.

12         THE COURT:  Okay.  So you have no stake in deciding

13   how these funds should be distributed.  That's your position?

14         MR. JACOBSOHN:  Yes, Your Honor.  I believe it states

15   in our complaint -- if you give me just a moment, I can pull it

16   up -- that Transamerica is an innocent stakeholder in this

17   action.

18         THE COURT:  Okay.  But you haven't -- am I wrong, you

19   haven't received a judgment dismissing you, have you?  I didn't

20   see that in the record.  I didn't see it in the record.

21         Have I missed something?

22         MR. JACOBSOHN:  Your Honor, we've been relying on --

23         THE COURT:  No, no, let me ask this question again.

24   Was there a judgment dismissing you or your client?

25         MR. JACOBSOHN:  No, Your Honor, only that order that

1  says plaintiff is discharged from any further proceedings.

2            THE COURT:  And then -- okay.  That's an order of the

3  Court, but it's not a judgment, right?  And you -- you would

4  have to -- in order to claim immunity, you would have to claim

5  that a judgment had been filed.

6            And the reason I raise that is because, Mr. Jacobsohn,

7  I'm sure you've had a lot of experience with these types of

8  cases, and you know what my options are, right, concerning the

9  disputed beneficiaries?

10            MR. JACOBSOHN:  I believe so.

11            THE COURT:  Okay.  Do I -- do I have jurisdiction to

12  resolve this federally?

13            MR. JACOBSOHN:  Well, yes, Your Honor, because --

14            THE COURT:  And why?  I'm sorry.  Let me make clear.

15  This is not a federal question case, so what jurisdiction do I

16  have?

17            MR. JACOBSOHN:  I -- I see where you're going, Your

18  Honor, with the diversity jurisdiction, because Transamerica is

19  the out-of-state entity and the other -- and the defendants are

20  Arizona -- or, excuse me, Arizona residents.

21            THE COURT:  Because -- you're saying there is

22  diversity?

23            MR. JACOBSOHN:  Yes, Your Honor.

24            THE COURT:  Okay.  And there is diversity, but what

25  causes of action do I have here under -- if I am -- if I am

1    looking at state law, what are the causes of action here for me

2    to resolve, in other words, the disputes that represent a cause

3    of action?  It is diversity jurisdiction, yes, but I have so

4    far excused your client, so what is -- what are the causes of

5    action here, or is the cause of action?

6            MR. JACOBSOHN:  Your Honor, the cause of action is

7    interpleader.

8            THE COURT:  I'm sorry.  Diversity jurisdiction I

9    understand, but what -- what is the cause of action that I need

10   to resolve amongst the beneficiaries?

11           MR. JACOBSOHN:  Your Honor, and I don't want to speak

12   incorrectly here, but this is -- this is an interpleader, so

13   that --

14           THE COURT:  Let me -- let me stop you.  Let me see if

15   I understand what you're saying, Mr. Jacobsohn.

16           Okay.  This was filed, yes, as an interpleader, and

17   you have deposit -- your client has deposited the funds.  And I

18   issued an order that you're not involved, or he is -- the

19   client is not involved in any further proceedings, but your

20   client is still a party.  Your client has not received a

21   judgment.  And in this -- in the allegations of this case,

22   there are allegations against your client.  And it is your

23   client's position that as soon as a judgment is filed, that

24   your client is immune.

25           Are we on the same page so far?

1          MR. JACOBSOHN:  Your Honor, I think the only

2     potential -- potential point of difference is our position has

3     been that our client is -- is immune as of the order that the

4     Court entered on --

5          THE COURT:  Yes, yes.  Okay.  We're talking about --

6     and you've had a lot of experience, I think, with these cases.

7     And so that's why I was --

8          MR. JACOBSOHN:  Your Honor --

9          THE COURT:  -- I -- I -- don't interrupt.  That's why

10    I asked you to be here.  I'm pleased that you are here.  I

11    would be concerned if you weren't.

12          But you've read all the papers that have been filed.

13    And some of the papers indicated that your client was at risk

14    for violation of state law, a contract violation; is that

15    right?

16          MR. JACOBSOHN:  Your Honor, if I could first respond

17    to --

18          THE COURT:  No.  I know your client is going to be

19    excused for liability, but I'm talking about right now what the

20    Court is to do about the underlying claims made by the

21    beneficiaries.  What am I -- do I have jurisdiction?  You said

22    I do.

23          MR. JACOBSOHN:  Yes, Your Honor.

24          THE COURT:  That there was diversity jurisdiction in

25    this case because your client is an out-of-state party.  But

1    your client is -- there is not -- that's not the only issue

2    here, because, of course, when a complaint is filed, and a

3    complaint is filed against -- and the various beneficiaries

4    have been served, and they have said, in part, that your client

5    has engaged in wrongful conduct.

6          So if I am to issue an order -- not an order, but a

7    judgment that your client is not liable, I have to do that.  I

8    have said so far in the order that your client doesn't have to

9    be involved in any further proceedings.  But what do I do now

10   with this case?  So assuming that, is there still jurisdiction

11   or do I have to dismiss it now and just grant the judgment of

12   immunity?

13         So I've had these cases before, been here for 30 years

14   and I've had interpleaders before, but I have never seen one as

15   complicated as this.  I don't think I've ever seen allegation

16   of the slayer statute.  And that didn't come from the police

17   department, that came from your client.  So here I am basically

18   saying your client is about to have no liability, so tell me

19   what jurisdiction I have to keep this case.

20         MR. JACOBSOHN:  Yes, Your Honor.  And if I could

21   just --

22         THE COURT:  And let me ask you.  Let me -- let me

23   broaden that a little bit.  Sorry to interrupt.

24         But if there is a cause of action that remains in this

25   court, why?  Why?

1          And then, secondly, if your client is still a party

2     with respect to whatever remains as a cause of action -- there

3     has been allegations against your client.  So certainly your

4     client, not having had a judgment yet, but presumed to have a

5     judgment, has independently been alleged to have engaged in

6     wrongful conduct.

7          MR. JACOBSOHN:  So, Your Honor, let me first say

8     you've been very kind towards Mr. Bressler in my experience,

9     and I would say that holds true towards Mr. Bressler.  You

10    might have me confused with some of my colleagues, in that I --

11    I am an associate relatively new to the practice, so if I'm not

12    answering your questions as eloquently as Mr. Bressler or

13    someone else would, my apologies.  Let me just make that clear,

14    because you've mentioned it a couple of times.

15         With regards to the causes of action, Your Honor,

16    this -- the cause of action is under 28 U.S.C. 1335:

17    Interpleader.  My understanding there has been no claim -- no

18    causes of action alleged against Transamerica by any of the

19    defendants.

20         THE COURT:  Well, okay.  Are there allegations against

21    your client that have nothing to do with interpleader where

22    it's deposited?  Are there allegations that your client was

23    engaged in wrongful conduct?

24         MR. JACOBSOHN:  No, there -- I can only say that there

25    has been no claims made against Transamerica.  I know from

1    Ms. Williams' filings she made comments about Transamerica and

2    stated things about them in her filings, but we view those as

3    evidentiary points and in support of her argument against the

4    other defendants.

5         THE COURT:  Okay.  Let me tell you what I think, which

6    is most important, and why I think this is a complicated

7    matter, is ordinarily I've seen that there are beneficiaries

8    that claim any -- they claim that they are entitled to the

9    insurance funds in an interpleader, but this is the first time

10   there has been allegations that I've seen where the insurance

11   company has been involved and has -- involved in a criminal

12   investigation, not just that you can't -- your client can't

13   discern -- can't discern who it goes to because you have a

14   question -- or your client has a question about the signature.

15        So this is different than other cases I've had,

16   because the allegations that have been filed by the defendants,

17   each and every one of them, has raised potential claim that

18   maybe doesn't belong here against your client, and certainly

19   has raised claims against all the other beneficiaries, claiming

20   that Ms. Williams now claims that she is the sole beneficiary.

21        So this is -- this is a jurisdictional question.  You

22   have to reach back to what you know about jurisdiction,

23   jurisdiction in federal court.  So if I maintained -- how can I

24   maintain resolution of this case in federal court?

25        So, in other words, there has been allegations.

1    Everyone claims that they are the ones who are entitled to

2    these funds.  And I think your client was the first one who

3    raised the slayer statute, so I'm sure your client and you

4    raised it because it may have some applicability to the

5    resolution of this case, right?

6            MR. JACOBSOHN:  Yes, Your Honor.  We -- we did raise

7    that.  I would say that, to clarify our position, I mean, there

8    are two beneficiaries named who -- and I'd also say you

9    mentioned that Transamerica was involved in a police

10   investigation.  I would say that that's stretching it a bit

11   from our perspective.  Transamerica learned about the ongoing

12   investigation, inquired as to the status of it.  And when it

13   learned that a beneficiary -- or multiple, excuse me, multiple

14   beneficiaries had not been cleared of involvement, at that

15   point it became essentially conflicted where it could not --

16   where it could not, you know, resolve the beneficiary issues

17   without -- due to the slayer statute.

18           THE COURT:  So --

19           MR. JACOBSOHN:  Not that Transamerica --

20           THE COURT:  -- I understand then -- first of all, the

21   primary issue for your client was that you couldn't -- or

22   client could not confirm the signature as authentic.  So -- but

23   what I see is that because your client learned there was an

24   underlying investigation, your client raised the slayer

25   statute.  And I -- I don't know for sure, but it seems to me

1    that that information was provided to all the potential

2    beneficiaries, and maybe even law enforcement.

3            Have I missed something?

4            MR. JACOBSOHN:  That is correct, Your Honor.

5            THE COURT:  Okay.  So let me tell you what I think.

6    And this is an unusual case, as I mentioned.  As I said, I'm

7    not going to go back over why I required you to be here, your

8    client to be here as a party.  And that was a mistake on your

9    part.

10           But I have to have jurisdiction of the remaining

11   disputes.  So the only way I think I can have jurisdiction from

12   what I have found is that the claim is brought by -- against

13   each other, and also against your client, and it would be an

14   independent claim, because it wouldn't have anything to do with

15   the funds, but it seems to me there might be a breach of

16   contract or maybe something else, and maybe a state cause of

17   action.

18           So your client would not be responsible for

19   distributing those funds, that's over as soon as I issue a

20   judgment.  And so your client has distributed to the Court.

21   The Court is holding it in abeyance until this matter is

22   resolved.

23           But, as I said, this is unusual, because in the

24   papers -- and I have to take the allegations as true, there is

25   a potential independent cause of action against your client,

1    right?

2          MR. JACOBSOHN:  Again, Your Honor, I just lean on the

3    fact that there has been no -- there has been no cause of

4    action alleged against our client.  And from our perspective,

5    the, you know, references made to Transamerica in Ms. Williams'

6    filings or other filings are -- are intended to support her

7    arguments against the other defendants.  I don't want to -- you

8    know, I don't want to put words in her mouth, but that's my

9    client's understanding of that position.

10         THE COURT:  So you didn't -- did you see in the papers

11   that your client, at least by one of the claimants, has made a

12   claim against your client that may rise to a cause of action,

13   state cause of action?

14         MR. JACOBSOHN:  Your Honor, I'm sure I've seen it.

15   You'd have to give me a little bit of prompting to what you're

16   referring to.

17         THE COURT:  Okay.  Because you've read it, and I'm

18   sure you're prepared because you've read it, but there

19   wasn't -- I never received a response to those allegations.

20   Yes, this is an interesting jurisdictional issue.  The only

21   way, as I mentioned, that I think I can maintain resolution of

22   this issue independently of whether the funds have been filed

23   with the Court, and I issue a judgment that your client is not

24   liable for those funds, but I independently will have to rule

25   and whether your client is otherwise liable, not having

1    anything to do with the distribution of the funds.  And I could

2    only do that if I have supplemental jurisdiction.  That's the

3    way I look at it.

4            And that's a critical issue for your client as to,

5    first of all, as I said, should I accept this case.  And I have

6    discretion, unless you tell me otherwise, to accept

7    supplemental jurisdiction cases -- or issues in an

8    interpleader.  And because it potentially will affect your

9    client, my concern is that you need to tell me what your client

10   wants to do.

11           I could also dismiss this case and still hold the

12   money in abeyance with the United States Treasury until the

13   underlying issues have been resolved.  So that's what I see is

14   my choice.

15           This case was brought by you on behalf of your client.

16   Your client is still the plaintiff.  With respect to the funds,

17   you are correct, I'm going to dismiss your client with respect

18   to those funds once I issue a judgment.  But what do I do about

19   the claims that have been made against each other in this case

20   and also against your client?  Your client has risk here on the

21   supplemental claims.

22           MR. JACOBSOHN:  Your Honor, I guess with regards to

23   the jurisdictional question, this is what I'd be happy to -- I

24   think I need to do an additional briefing.  I don't -- I

25   wouldn't want to give you the wrong answer with regards to the

1    jurisdictional issue.

2        THE COURT:  Okay.  That's -- that's a good start.  And

3    that's what we're -- that's what I'm going to want to hear from

4    you, and also all the defendants.  And I suggest that -- and I

5    know I don't have to do this, because you are certainly a

6    competent lawyer, as is Mr. Bressler, but I would suggest that

7    you do as I did and take a look at the answers, which are

8    pleadings.  And I didn't hear any -- I didn't hear any response

9    from your client to those allegations, and you don't -- your

10   client doesn't have to, but there was no specific response to

11   all the allegations.  And your client has been alleged to have

12   engaged in misconduct.

13       So there is a jurisdictional issue as to whether or

14   not I should keep the case, because I think it's a supplemental

15   jurisdiction issue.  I'm not sure what the cause of action is,

16   because the papers I've received from each of the beneficiaries

17   make claims against each other, but primarily make a claim that

18   they're entitled -- or Ms. Williams says that she's entitled to

19   all the funds, or the insurance funds.

20       The others claim that they are entitled to funds, that

21   is, the ex-wife and the son, based upon the most -- the most

22   recent one before the one that's alleged to be applicable.  And

23   the daughter is not mentioned as a beneficiary, but she was --

24   she was a beneficiary -- alleged to be a beneficiary before.

25       And your allegation -- your client's allegation is

1    that he -- the client could not determine whether or not the

2    signature was accurate, I'm guessing, but they all look the

3    same to me on all the documents that have been presented to me.

4    But I am sure your client has carefully reviewed the previous

5    signatures, and perhaps, I'm guessing, I don't know it to be

6    true, that your client was concerned about the signatures on

7    the previous insurance policy.  So I don't know that.  I'm not

8    asking you to answer that.

9         But, yes, I need to know what jurisdiction I have.  My

10   sense, it's supplemental.  I'm actually very concerned about

11   what the cause of action is, because it is partially against

12   your client.  And I suppose the beneficiaries, each and every

13   one of them, may have technically, because they were

14   beneficiaries at some time, may have an independent cause of

15   action against your client somehow.  I'm not -- I'm not sure.

16        If your client's excused from distributing these funds

17   as a judgment, you've done everything you should do, then --

18   but I -- and I, obviously, in an interpleader that's what I

19   issue, but it seems to me your client still has potential

20   liability.

21        And I'm sure, Mr. Jacobsohn, you represent your client

22   for any liability that arises out of this, your client's

23   involvement in issuing and approving the insurance policies,

24   right?

25        MR. JACOBSOHN:  That's my -- that's my understanding,

1   Your Honor, yeah.

2           THE COURT:  Okay.  I'm going to talk to Ms. Williams

3   in a moment, but let me ask you, Mr. Jacobsohn.  Do you know

4   the status of the criminal investigation by the police

5   department, El Mirage, or your client know?

6           MR. JACOBSOHN:  No, Your Honor.  All -- every -- all

7   the information we have regarding the police investigation was

8   disclosed in our filings.  Your Honor, when we -- when my

9   client first learned about the -- about the ongoing

10  investigation with regards to who the beneficiary is, that is

11  when the other issue arose.  That, I would say, in addition to

12  the verification of the signature authenticity, if two of the

13  beneficiaries had not been cleared of the death of the insured,

14  that's presented, you know, an independent basis for the

15  interpleader to show signatures authenticity.

16          And then since then, at the time that we have

17  mentioned in the complaint and in our filings, and since, those

18  are the only times that Transamerica has been in contact with

19  the police department.  The information that it received from

20  the police department is stated in the filing.  I -- neither

21  myself nor my client is aware of any changes that may have

22  happened in the investigation.

23          THE COURT:  So let me ask you this.  Did you read

24  Ms. Williams' motion for summary judgment?

25          MR. JACOBSOHN:  Yes.

1          THE COURT:  Okay.  So you have -- your client have any

2     reason to believe that she has been granted immunity in this

3     matter?  She claims that there is no potential investigation

4     against her.  Can you confirm that?

5          MR. JACOBSOHN:  Your Honor, I can't confirm or deny

6     what, you know, what -- it would be hearsay, or what

7     Ms. Williams -- her conversation with the police department

8     might --

9          THE COURT:  Well, we don't have to worry about hearsay

10    here.  This is not a trial.  What's the hearsay?

11         MR. JACOBSOHN:  Your Honor, my point being is that

12    we've had no further communications with the El Mirage Police

13    Department since the last time we spoke with them, which was --

14    if you give me just a moment, it's listed in --

15         THE COURT:  So --

16         MR. JACOBSOHN:  -- in our previous filings.

17         THE COURT:  Remind me of when that was and what was

18    said and by whom.

19         MR. JACOBSOHN:  Give me just a moment, Your Honor.  I

20    don't have it pulled up.

21         Your Honor, the most recent conversations that I

22    have -- and this is from our filings in -- this is Document

23    Number 22, our response to -- Ms. Williams made a filing

24    containing a number of separate sub-parts, including a motion

25    to strike.  We spoke with -- our office spoke with the El

1    Mirage Police Department on April 15th, which confirmed to our

2    office that Ms. Williams was a suspect as of April 15th.  I'm

3    not sure if there has been a development.

4            THE COURT:  Okay.  But your client hasn't received any

5    information from the police department that she or the son,

6    Collin, is no longer a target of this investigation; is that

7    right?

8            MR. JACOBSOHN:  I am not aware of anything like that,

9    Your Honor.

10           THE COURT:  So, in other words, you're saying to me

11   that there has been no information that your client has

12   received that has excused Ms. Williams and Collin, the son?

13           MR. JACOBSOHN:  That's correct, Your Honor.

14           THE COURT:  Okay.  All right.  So, Mr. Jacobsohn, let

15   me make this clear to you, as I hope I have, is that, yes, with

16   respect to the cause of action that has been filed by you on

17   behalf of your client, what is pending is for me to release

18   your client of obligations with respect to obligations to

19   determine who is the actual beneficiary.  But, as I said, it

20   seems to me that your client may be independently liable based

21   upon the allegations by the beneficiaries.  So I'm going to

22   have you brief that for me and provide it to all of the

23   defendants, alleged beneficiaries.

24           On the jurisdictional issue, I've given you at least

25   something to think about, which is whether or not whatever

1    remains before the Court because of the allegations by each of

2    the defendant -- each of the defendants, the alleged

3    beneficiaries, that they're entitled to the funds.  And they're

4    entitled to the funds because of allegations against

5    themselves, or against each other, but also allegations that

6    brings your client into this -- this dispute that remains.

7         And I see that as potential supplemental jurisdiction.

8    And I think there is a case from the Fourth Circuit that

9    addresses this.  I don't have it, but I will issue an order.

10   And I'm not sure there are other cases, but I think that case

11   makes clear that there is supplemental jurisdiction.

12        And as I think you know, the case law provides that

13   the Court, federal court, has discretion whether to maintain

14   the supplemental jurisdiction causes or dismiss them.

15        And, as I said, this is a very complicated matter.  We

16   have pro se defendants here.  I'm not sure why Mr. Montoya is

17   not here, but I'm going to find out, because just like you, he

18   was required to be here, received all the orders that I issued.

19   So I don't know what his position will be, but let's start with

20   you on the jurisdictional issues.

21        And the alternative would be for me not to accept the

22   supplemental jurisdiction, which as I'm looking at what I have

23   in front of me, may well make the most sense.  And also

24   because, although Ms. Williams claims she's no longer a subject

25   or target of the El Mirage Police Department investigation, I

1  don't know that to be true.  You don't know that to be true.

2  And if it is still pending, seems to me it may not make any

3  sense for me to maintain jurisdiction.  So that's what I'm

4  saying to you.

5          And so I'll issue an order.  And you are to let me

6  know, file a response that will address everything that I have

7  said today that you are required to address.

8          And now, Ms. Williams, are you still there?

9          MS. WILLIAMS:  Yes, Your Honor.

10          THE COURT:  And you're not represented by counsel,

11  correct?

12          MS. WILLIAMS:  Yes, Your Honor, I'm not represented by

13  any counsel.

14          THE COURT:  Okay.  So I take it from what you filed in

15  your motion for summary judgment is that you are no longer a

16  subject or target of the criminal investigation that was

17  initiated.  Am I right?

18          MS. WILLIAMS:  Correct, especially with the police

19  report that I had obtained from the police department.

20          THE COURT:  Okay.  So I can't tell from the papers you

21  filed, but let me just say this is that I don't know -- the

22  papers you filed I cannot determine that you have been

23  dismissed, you have immunity, that the police department is

24  determined that you are not liable for what they claim is

25  murder.

1        So you need to know that because of the allegations

2   that have come before me in this file, I need to tell you that

3   if the investigation is ongoing and you have not been dismissed

4   with prejudice, you have a Fifth Amendment privilege, and

5   anything you say could be used against you in a criminal

6   investigation.

7        You've already given me plenty of papers.  I can't

8   rule on your summary judgment, because, as I've said, summary

9   judgments are not allowed to be filed until this hearing has

10  resolved, until the Court resolves whether or not there are

11  genuine issues of material fact.  You claim there are no

12  genuine issues of material fact, there are.  You -- I can't

13  take everything that you said as true.  The allegations of the

14  other claimants make clear that they contest whether or not you

15  were involved in the murder of the decedent.  So that's an

16  issue of fact.

17       So I'm going to repeat again, unless you are

18  absolutely clear and convinced that you are not a target in

19  this investigation, you are not a potential defendant in this

20  investigation, you better think hard and long about whether or

21  not you want to say anything.

22       Now what you filed already, made statements already,

23  may raise questions about your incrimination in a whole variety

24  of different ways.  And I'm not going to get into it, but you

25  filed a number of things attached -- or allegedly attached to

1    your motion for summary judgment.

2          So I don't want to hear from you today other than to

3    make sure you understand how we're proceeding.  I'm going to

4    hear from Mr. Jacobsohn.  And with respect to Mr. Jacobsohn's

5    allegations and what he requests the Court to do, you can

6    respond to that, because that deals with mostly just the

7    interpleader and whether or not --

8          MS. WILLIAMS:  Okay.

9          THE COURT:  -- whether or not there are -- what has

10   been alleged constitutes supplemental jurisdiction, that is,

11   separate jurisdiction on whether or not I should grant the

12   interpleader.  So that's up to you.  I have no idea why

13   Mr. Montoya is not here, and that's a different issue.

14         But he will receive the papers, Mr. Jacobsohn, and I

15   will require that he respond.  And so, obviously,

16   Mr. Jacobsohn, in consultation with your client, you are then

17   to file something so I can resolve the jurisdiction.

18         And, as I said, I have, I believe, based upon the case

19   law, and based upon my own understanding of federal

20   jurisdiction, I could -- I could interpret the dispute here as

21   a supplemental jurisdiction issue.  Although it isn't quite

22   clear to me exactly what it is, and it definitely is

23   potentially a separate cause of action against your client.  So

24   I have to decide what to do with it.  Should I maintain it?

25   Should I dismiss it and see what -- and then the beneficiaries

1    can see what happens or file their own cause of action in state

2    court?  Which hopefully would be much clearer as to what the

3    cause of action is than I have here, and understanding that, of

4    course, the claimants to -- the beneficiaries, claimants to

5    this fund didn't think that they had to in particular allege a

6    state cause of action.

7         I don't see any federal cause of action.  I don't see

8    that any of the papers that have been filed, the pleadings on

9    both sides, has created an independent federal cause of action,

10   it's just a potential supplemental jurisdiction.

11        And, finally, I'm repeating again, if the

12   investigation is ongoing, my sense is -- and has not been

13   resolved one way or another, it doesn't make sense for me to

14   maintain jurisdiction.  So that's not a final opinion.  I'm

15   going to wait to see what everybody has to say.

16        All right.  Mr. Jacobsohn, is that clear?

17        MR. JACOBSOHN:  Yes, Your Honor.  Thank you.

18        THE COURT:  And, Ms. Williams, is that clear?

19        MS. WILLIAMS:  Yes, Your Honor.

20        THE COURT:  Okay.  And this is something I say to

21   everyone.  First of all, I want you to understand I have not

22   made a decision whatsoever about whether you are entitled to

23   those funds or not, and whether or not there is any basis for a

24   criminal investigation against you or Mr. Collins.  I have not,

25   as I mentioned, taken any of the allegations as true.  But

1  whether it's a civil case before me, which is -- this is

2  technically, or a criminal case before me, and I have pro se

3  litigants, I tell them that it's dangerous to be in court

4  without counsel.

5          And let me make this clear.  I'm a federal judge.

6  I've been a lawyer for over 50 years.  Been, of those 50 years,

7  a federal judge for 30 years, I would never walk into a

8  courtroom, if I had been sued, without a lawyer.  I don't care

9  if that's in city court, I don't care if that's in state court,

10 or federal court, it is dangerous.  Because not only are you

11 subject to losing the allegations and not, for you, obtaining

12 or becoming the sole beneficiary, but you -- there are

13 allegations that are potentially criminal here.

14         So in every civil case being a pro se is never a good

15 idea, but in criminal cases, it is much more dangerous because

16 your liberty is at risk.

17         Have you understood, Ms. Williams?

18         MS. WILLIAMS:  Yes, Your Honor.

19         THE COURT:  All right.  Okay.  Then this matter is

20 going to be adjourned and an order will follow.

21         We are adjourned.

22         (Proceedings concluded at 11:03 a.m.)

23                    *          *          *

24

25

1                    C E R T I F I C A T E

2

3          I, CHRISTINE M. COALY, do hereby certify that I am

4    duly appointed and qualified to act as Official Court Reporter

5    for the United States District Court for the District of

6    Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control.

12         DATED at Phoenix, Arizona, this 10th day of August,

13   2024.

14

15

16                    /s/ Christine M. Coaly_____

17                    Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25