**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Transamerica Life Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Tayjalaya S Williams, et al.,<br><br>Defendants. | No. CV-24-00379-PHX-ROS<br><br>**ORDER** |

This case arises out of competing claims to a $100,000 death benefit in a life insurance policy Plaintiff Transamerica Life Insurance Company issued on August 21, 2018 insuring the life of Thomas Retzlaff (the "Decedent"). (Doc. 1, "Compl."). On September 1, 2021, the Decedent died in a possible homicide currently under investigation by the El Mirage Police Department. (Compl. at ¶¶ 13-15). The Defendants—Denise A. Hollas (Mr. Retzlaff's then-divorced ex-spouse), Brittany A. Retzlaff (Mr. Retzlaff's daughter), Colin A. Retzlaff (Mr. Retzlaff's son), and Tayjalaya S. Williams (Mr. Retzlaff's widow)—have made disputed claims to the death benefit. (Compl. at ¶¶ 20-23).[1]

---

[1] The primary beneficiaries of the insurance policy (the "Policy") at the time of its issuance on August 21, 2018 were Brittany Retzlaff (45% share), Collin Retzlaff (45% share), and Denise Hollas (10% share). (Compl. at ¶ 9). On November 10, 2020, Transamerica updated the Policy pursuant to Decedent's change of beneficiary request to name Collin Retzlaff (90% share) and Denise Hollas (10% share) as the only primary beneficiaries. (Compl. at ¶ 10). On June 1, 2021, Transamerica updated the Policy pursuant to a change of beneficiary request to name Tayjalaya Williams (75% share) and Collin Retzlaff (25% share) as the only primary beneficiaries. (Compl. at ¶ 11). Allegedly, Decedent and Tayjalaya Williams got married on August 28, 2021. (Compl. at ¶ 12). Four days later, Decedent died, either by natural causes or he was murdered. (Compl. at ¶ 13). On September 2, 2021, one day after the death, Transamerica received a beneficiary change request dated August 28, 2021, naming Tayjalaya Williams as the sole beneficiary to

Unable to determine the true beneficiary, Plaintiff filed this suit and a motion for interpleader deposit on March 29, 2024. (Doc. 20). On April 24, 2024, the Court ordered Plaintiff to deposit $91,616.45 (the "Policy Benefit") with the Clerk of Court, upon which Plaintiff is discharged from any other proceedings and from any and all liability arising out of any claim to the Policy Benefit. (Doc. 26). Plaintiff deposited the Policy Benefit with the Clerk on April 30, 2024. (Doc. 30).

### I. Plaintiff's Motion for Dismissal

On August 14, 2024, Plaintiff moved to be dismissed as a party to this action, arguing no claim had been asserted against it as of April 30, 2024, when the Court's discharge Order became effective. (Doc. 52). In response, Defendant Williams opposed Plaintiff's dismissal, asserting Plaintiff owed interest on the Policy Benefit "from the date of the insured's death until funds are claimed." (Doc. 54). Defendant Williams also asserted entitlement to interest on the Policy Benefit in her motion for summary judgment filed on July 19, 2024. (Doc. 36).

Defendant Williams' claim for interest owed by Plaintiff is barred by the Court's April 24, 2024 Order, holding upon deposit of the Policy Benefit with the Clerk, Plaintiff is "discharged from any other proceedings in this action and from any and all liability arising out of any claim to the Policy Benefit." (Doc. 26). The Order further states "Defendants are permanently enjoined from commencing or prosecuting any other suit or action against Plaintiff for the collection of the Policy Benefit payable because of the death of Thomas Retzlaff . . . ." (Doc. 26). Defendant Williams failed to assert a claim of interest in her response to Plaintiff's motion for interpleader deposit[2] (Doc. 21), or in her initial answer. (Doc. 16). Further, Defendant Williams filed her motion for summary judgment almost three months after the Court's order became effective.

"'If an interpleading plaintiff has no interest in the stake [it] should be dismissed.'"

---

receive 100% of the death benefit. (Compl. at ¶ 14). Transamerica was unable to verify the authenticity of Decedent's signature and thus did not execute this change. (Compl. at ¶ 14).
[2] Her response to Plaintiff's motion for interpleader deposit only opposed Plaintiff's request for attorneys' fees and did not raise a claim for interest on the Policy Benefit.

- 2 -

*Sun Life Assur. Co. of Can. v. Estate of Chan*, No. C-03-2205 SC, 2003 WL 22227881, at *2 (N.D. Cal. Sept. 22, 2003) (quoting *Metro. Life Ins. Co. v. Foley*, No. CIV.A. 02-1479, 2002 WL 31399787, at *4 (E.D. La. Oct. 23, 2002)).  Plaintiff is a disinterested stakeholder and no longer retains possession of the Policy Benefit.  Thus, consistent with the Court's April 24, 2024 Order, the Court will grant Plaintiff's motion for dismissal, deny Defendant Williams' motion for summary judgment, and deny Defendant Williams' motion for leave to file a sur-reply.[3]

## II.     The Court's Jurisdiction

On August 6, 2024, a status conference was held to discuss, among other things, jurisdiction over the second stage of this interpleader case upon Plaintiff's dismissal.  Pursuant to Court order, Plaintiff filed a thorough and persuasive supplemental brief addressing whether the Court has jurisdiction to resolve the competing claims of the

---

[3] Defendant Williams filed a motion for leave to file sur-reply on August 26, 2024. (Doc. 60).  "[S]ur-replies are highly disfavored and permitted only in extraordinary circumstances." *Finley v. Maricopa Cnty. Sheriff's Office*, CV-14-02609-PHX-DLR, 2016 WL 777700, at *1, n.1 (D. Ariz. Feb. 29, 2016), *aff'd sub nom. Finley v. Fax*, 683 Fed. Appx. 630 (9th Cir. 2017).  There are no extraordinary circumstances.  Instead, Defendant Williams' motion for a sur-reply "raises no new arguments beyond those presented" in her response to Plaintiff's motion for dismissal.  *Id.*  It "merely reiterates arguments made in her response brief … [and] is neither appropriate nor helpful."  *Id.*  Even if Defendant Williams asserted new arguments in her sur-reply, they would be barred by the Court's April 24, 2024 Order. Furthermore, Defendant Williams' filings are replete with citations to nonexistent caselaw and legal authorities that do not correspond to her claims, suggesting that Defendant Williams may be using AI, such as ChatGPT, to draft her briefs, which is impermissible when fictitious legal authorities are cited.  Throughout her motion for summary judgment, her response to Plaintiff's motion for dismissal, and her sur-reply, Defendant Williams cites to several nonexistent cases including "*Ransom v. Penn Mut. Life Ins. Co.*, 43 F. Supp. 95, 97 (D. Ariz. 1942)" (Doc. 54 at 2; Doc. 60 at 4); "*Sun Life Assurance Co. of Canada v. Wood*, F.2d 49, 53 (10th Cir. 1976)" (Doc. 60 at 4); "*MetLife Ins. Co. v. Jackson*, 896 F.2d 1368 (4th Cir. 1990)" (Doc. 36 at 8); and "*Smith v. Doe*, 123 F.3d 456, 460 (9th Cir. 1997)" (Doc. 36 at 13).  Additionally, Defendant Williams repeatedly cites to Ariz. Rev. Stat. Ann. §§ 20-464, 1210 to support her claim for interest, but those subsections deal with assignment of payment for services and nonforfeiture options in insurance policies, respectively, and have nothing to do with an insurer's obligation to pay interest.  "Although courts 'make some allowances for the *pro se* Plaintiff's failure to cite to proper legal authority,' courts do not make allowances for a [party] who cites to fake, nonexistent, misleading authorities." *Morgan v. Cmty. Against Violence*, No. 23-CV-353-WPJ/JMR, 2023 WL 6976510, at *7 (D.N.M. Oct. 23, 2023) (quoting *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013)).  Thus, Defendant Williams is advised she must comply with this Court's local rules, the Court's Handbook for Self-Represented Litigants, and the Federal Rules of Civil Procedure.  Any future filings with citations to nonexistent cases may result in sanctions such as dismissal of her claim.

claimants as to the deposited funds. (Doc. 51).

Interpleader actions proceed in two distinct stages. *First Interstate Bank of Or., N.A. v. U.S. By and Through I.R.S.*, 891 F. Supp. 543, 546 (D. Or. 1995). "First, the court determines the propriety of interpleading the adverse claimants and relieving the stakeholder from liability. The second stage involves an adjudication of the adverse claims of the defendant claimants." *Id.* Having relieved Plaintiff of liability, this case now turns on the adjudication of the adverse claims made by Defendants.

To promote expeditious resolution of the matter, federal courts routinely maintain jurisdiction over the second stage of an interpleader case based on diversity jurisdiction after a stakeholder's dismissal renders the remaining parties non-diverse from each other. *See* 7 Fed. Prac. & Proc. Civ. § 1710 (Wright & Miller 3d ed. Jun. 2024 Update). Courts typically rely on at least one of two bases to support maintaining jurisdiction: first, "the notion that once diversity jurisdiction exists in a rule-interpleader case it is not lost when the stakeholder is discharged," and second, "by invoking the theory that there is ancillary jurisdiction over the second stage of the interpleader." *Id.*

"Diversity jurisdiction is based on the status of the parties at the outset of the case[.]" *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005). Jurisdiction over this action pursuant to 28 U.S.C. § 1332 was established at the outset. Transamerica is a citizen of Iowa, all Defendants are citizens of Arizona, and the amount in controversy exceeds $75,000. Thus, Plaintiff's dismissal does not strip the Court of its jurisdiction over the remainder of this case.

Plaintiff has offered several persuasive cases. *See, e.g., Prudential Ins. Co. of Am. v. Wells*, No. CV-15-08170-PCT-DGC, 2016 WL 687135, at *3 n. 2 (D. Ariz. Feb. 19, 2016) (finding jurisdiction when Prudential was from New Jersey and claimants were from Arizona, then, at a subsequent Order entered May 2, 2016, retaining jurisdiction to adjudicate the claims); *Liberty Life Assur. Co. of Boston v. Ramos*, No. CV-11-156-PHX-LOA, 2012 WL 10184 (D. Ariz. Jan. 3, 2012) (finding diversity jurisdiction pursuant to 28 U.S.C. § 1332 "even if some claimants are citizens of the same state" because the

stakeholder was diverse from all defendants, then retaining jurisdiction to adjudicate the claims at *K.T. v. Ramos*, No. CV-11-156- PHX-LOA, 2012 WL 443732 (D. Ariz. Feb. 13, 2012)); *Massachusetts Mut. Life Ins. Co. v. Murdoch*, 56 F. Supp. 500, 502 (D. Or. 1944) ("[T]he preliminary controversy between the plaintiff in interpleader and the defendants is a real one and [] such an action can be maintained even though both alleged claimants are citizens of one state which is different from that where plaintiff holds its citizenship."); *Aetna Life & Cas. Co. v. Spain*, 556 F.2d 747, 749 (5th Cir. 1977) ("Because diversity existed between the insurer and both interpleaded defendants, however, the district court properly retained jurisdiction even after the insurer disclaimed interest in the controversy.").

*CMFG Life Ins. Co. v. Smith*, No. CV 13-261 ABC (CWX), 2014 WL 12585794 (C.D. Cal. Mar. 3, 2014) is illustrative. As here, the insurance company was diverse from all interpleader defendants. *See id.* at *1 (citing Fed. R. Civ. P. 22 and 28 U.S.C. § 1332). As Transamerica was discharged from further proceedings and all liability after depositing the Policy Benefit, the insurance company was dismissed after depositing the policy proceeds. *See id.* After the insurance company's dismissal, the remaining claims were between two California citizens. *See id.* at *2. The *Smith* court raised the jurisdictional issue *sua sponte*, determined that it did have jurisdiction, and "[found] it appropriate as a practical matter to retain jurisdiction over the interpleader action to oversee the eventual disbursement of the policy funds." *Id.* In addition to the practical considerations, the Smith court noted that the time-of-filing rule "supports retaining jurisdiction over the interpleader action." *Id.*

Accordingly, the Court will retain jurisdiction over Defendants Denise Hollas, Brittany Retzlaff, Collin Retzlaff, and Tayjalaya Williams and their claims regarding the Policy Benefit funds deposited with the Clerk and will resolve the competing claims of the Defendants to the Policy Benefit.

**III.   Arizona's Slayer Statute and Defendants' Current Positions**

The federal common law and the laws of every jurisdiction nationwide prohibit a

beneficiary who was responsible for the death of an insured from profiting from wrongful conduct. *See e.g., Egelhoff v. Egelhoff*, 532 U.S. 141, 152 (2001) (citing *Riggs v. Palmer*, 115 N.Y. 506 (1889)), and noting in dictum that the principles underlying state slayer statues "are well established in the law and ha[ve] a long historical pedigree").

Arizona's "slayer statute" is applicable here and provides "[a] person who feloniously and intentionally kills the decedent forfeits all benefits . . . with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property and a family allowance. If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed that person's intestate share." Ariz. Rev. Stat. Ann. § 14-2803(A).

The statute further provides that the felonious and intentional killing of the decedent revokes any revocable (a) disposition or appointment of property made by the decedent to the killer in a governing instrument and (b) nomination of the killer in a governing instrument, nominating or appointing the killer to serve in any fiduciary or representative capacity, including a trustee or agent. Ariz. Rev. Stat. Ann. § 14-2803(B). Courts determined the statute applies to life insurance policies, as well. *See, e.g., Protective Life Ins. Co. v. Mizioch*, No. CV 10-1728-PHX-JAT, 2011 WL 587963, at *3 (D. Ariz. Feb. 10, 2011) (finding Arizona's slayer statute prohibits one "who feloniously and intentionally kills the decedent" from obtaining any benefits from the decedent's estate, including any applicable life insurance policies); *Castro v. Ballesteros-Suarez*, 213 P.3d 197, 206-07 (Ariz. Ct. App. 2009) (holding that under Arizona's slayer statute wife responsible for murder of her husband not entitled to any portion of his life insurance proceeds).

To render a beneficiary ineligible to collect death benefit proceeds, Arizona's slayer statute requires an interested person to show either (1) a judgment of conviction or (2) a civil determination by only a preponderance of the evidence that the alleged slayer would be found criminally accountable for the felonious and intentional killing of the decedent. *See* Ariz. Rev. Stat. Ann. § 14-2803(F). Under Ariz. Rev. Stat. Ann. § 14-2803(L)(2), the criminal act of "felonious and intentional" is defined as "a conviction or a finding of guilt

except insane for a homicide pursuant to section 13-1103, 13-1104, or 13-1105." The sections which follow address manslaughter, second-degree murder, and first-degree murder, respectively.[4]

Per Ariz. Rev. Stat. Ann. § 13-1103(A), a person commits manslaughter by doing any of the following:

> (1) Recklessly causing the death of another person;
> (2) Committing second degree murder . . . on a sudden quarrel or heat of passion resulting from adequate provocation by the victim;
> (3) Intentionally providing the physical means that another person uses to die by suicide, with the knowledge that the person intends to die by suicide; or
> (4) Committing second degree murder . . . while being coerced to do so by the use or threatened immediate use of unlawful deadly physical force on the person or a third person that a reasonable person in his situation would have been unable to resist . . . .

Per Ariz. Rev. Stat. Ann. § 13-1104(A), a person commits second degree murder, if without premeditation:

> (1) The person intentionally causes the death of another person . . .;
> (2) Knowing that the person's conduct will cause death or serious physical injury, the person causes the death of another person . . .; or
> (3) Under circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person . . . .

Per Ariz. Rev. Stat. Ann. § 13-1105(A), a person commits first degree murder if:

> (1) Intending or knowing that the person's conduct will cause death, the person causes the death of another person . . . or
> (2) Acting either alone or with or more person the person commits or attempts to

---

[4] Although the Arizona Court of Appeals previously held that a conviction for manslaughter committed by recklessly causing the death of another person did not conclusively establish that the convicted person "feloniously and intentionally" killed another for purposes of the slayer statute, *Matter of Est. of Hoover*, 682 P.2d 469, 469 (Ariz. Ct. App. 1984), the Arizona legislature amended Ariz. Rev. Stat. Ann. § 14-2803 in 2012 by defining "felonious and intentional" to include "a conviction or a finding of guilty" "pursuant to section 13-1103 [manslaughter]." *See* 2012 Ariz. Legis. Serv. Ch. 277 (H.B. 2742).

commit an enumerated felony . . . .

But a criminal conviction is not required to establish ineligibility to the Policy Benefit pursuant to the slayer statute. Rather, this finding can be established in a civil action. Here, the Defendants alleging the slayer statute precludes a claimant from receiving the Policy Benefit are only required to prove more probably than not the claimant murdered Decedent or committed manslaughter with respect to Decedent.

The Complaint asserts "on February 1, 2022, Transamerica spoke with the El Mirage police department, who stated that Collin Retzlaff was not cleared of involvement, and that Tayjalaya S. Williams was the prime suspect [in Decedent's murder]." (Compl. at ¶ 15). And that Arizona's slayer statute is invoked. (Compl. at ¶ 18-19).

Defendants Brittany Retzlaff and Denise Hollas in their answer did not take a position as to Collin Retzlaff's and Tayjalaya Williams' involvement in the murder investigation (Doc. 13 at ¶¶ 15-16), however, they agree the slayer statute may be applicable. (Doc. 13 at ¶¶ 18-19). Defendant Collin Retzlaff in his answer identifies Defendant Williams as "the prime suspect" and maintains his innocence (Doc. 14 at ¶ 15),[5] and agrees the slayer statute may be applicable. (Doc. 14 at ¶¶ 18-19). Defendant Williams in her answer denies being a prime suspect in Decedent's murder and purports to attribute the murder to Defendant Collin Retzlaff. (Doc. 16 at ¶ III.F and G).[6] Although all Defendants' assertions are far from clear or factually developed and do not expressly invoke the slayer statue, the Court finds they sufficiently raise a controversy as to the murder or manslaughter of Decedent and to separate entitlement to the Policy Benefit.

…

---

[5] Defendant Colin Retzlaff alleges, "[o]nly a few weeks after the murder, Tay Williams cleaned the property with her family and moved back in believing [Decedent] had a 'limitless' credit card that would pay the rent on time every month. Tay Williams believed [Decedent] was retired and extremely wealthy and made claims [Decedent's family] only wanted him for his 'money' causing undue stress . . . . It is also believed Tay Williams was committing fraud using debit cards in other peoples [sic] names and potentially receiving illegal funds through illicit means [sic]."

[6] Defendant Williams alleges, "Thomas described Colin Retzlaff as 'NUTS' and acknowledged ongoing harassment issues caused by Colin and his associates." (Doc. 16 at ¶ III.F).

### IV. Next Steps

The Court will set a status conference to establish the course of action for resolution of entitlement to the Policy Benefit. At least one week before the status conference, the Defendants—Collin Retzlaff, Brittany Retzlaff, Denise Hollas, and Tayjalaya Williams—shall meet and confer and prepare a Joint Plan to proceed further regarding discovery, motions, and trial.[7] Following the filing of the Joint Plan and the representations made by the parties at the status conference, the Court will issue a scheduling order regarding proceeding forward.

Accordingly,

**IT IS ORDERED** Plaintiff's motion for dismissal (Doc. 52) is **GRANTED**. Transamerica Life Insurance Company is dismissed for any further proceedings in the matter.

**IT IS FURTHER ORDERED** Defendant Williams' motion for summary judgment (Doc. 36) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** Defendant Williams' motion for leave to file sur-reply (Doc. 60) is **DENIED**.

…
…
…
…
…
…
…
…
…

---

[7] Unrepresented Defendants are strongly encouraged to obtain counsel. Otherwise, they are strongly encouraged to review the handbook entitled "Representing Yourself in Federal Court in the District of Arizona: A Handbook for Self-Represented Litigants" for more detailed information regarding court procedures and representing oneself. *See* https://publicapps.azd.uscourts.gov/prose-survey/.

**IT IS FURTHER ORDERED** Defendants Collin Retzlaff, Brittany Retzlaff, Denise Hollas, and Tayjalaya Williams shall meet and confer and prepare a Joint Plan to be filed no later than **September 27, 2024**. A Status Conference is set for **October 4, 2024, at 10:00 a.m.** in Courtroom 604, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix, Arizona 85003-2151. All Defendants must appear in-person unless written permission from the Court is obtained at least five days prior to the hearing.

Dated this 6th day of September, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge