WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Transamerica Life Insurance Company, | No. CV-24-00379-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Tayjalaya S Williams, et al., | |
| Defendants. | |

This interpleader case, initiated by Transamerica Life Insurance Company ("Transamerica"), arises out of competing claims to a $100,000 death benefit in a life insurance policy issued by Transamerica insuring the life of decedent Thomas Retzlaff ("Decedent"). The Defendants—Denise A. Hollas (Decedent's then-divorced ex-spouse), Brittany A. Retzlaff (Decedent's daughter), Colin A. Retzlaff (Decedent's son), and Tayjalaya S. Williams (Decedent's widow)—have made disputed claims to the death benefit. Ms. Williams filed a Motion for Summary Judgment. (Doc. 79). Ms. Retzlaff and Ms. Hollas responded. (Doc. 83). Mr. Retzlaff failed to respond. Ms. Williams replied. (Doc. 85). For the following reasons, the Motion will be denied.

**I.   Background**

Transamerica filed this action unable to determine the true beneficiary of Policy No. 6600534140 (the "Policy"), issued on August 21, 2018, insuring the life of Thomas Retzlaff for $100,000. (*See* Doc. 1, "Compl." ¶ 8). On September 1, 2021, Decedent died in a homicide currently under investigation by the El Mirage Police Department. (Compl.

¶¶ 13-15).

Transamerica alleges the application that was attached to and became part of the Policy, Decedent designated Brittany Retzlaff, Collin Retzlaff and Denise Hollas as the primary beneficiaries. (*Id.* ¶ 9). Ms. Retzlaff and Mr. Retzlaff were each to receive 45% of the death benefit, and Ms. Hollas was to receive 10% of the death benefit. (*Id.*). During Decedent's lifetime, Transamerica received multiple change of beneficiary requests. (*Id.* ¶ 10). Specifically, on November 10, 2020, Transamerica updated the Policy pursuant to Decedent's change of beneficiary request to name Mr. Retzlaff and Ms. Hollas as the only primary beneficiaries. (*Id.*). This change specified that Mr. Retzlaff was to receive 90% of the death benefit, and Ms. Hollas was to receive 10% of the death benefit. (*Id.*).

On June 1, 2021, Transamerica updated the Policy pursuant to a change of beneficiary request to name Ms. Williams and Mr. Retzlaff as the only primary beneficiaries. (*Id.* ¶ 11). This change specified that Ms. Williams was to receive 75% of the death benefit, and Mr. Retzlaff was to receive 25% of the death benefit. (*Id.*). On August 28, 2021, Decedent married Ms. Williams. (*Id.* ¶ 12). Four days after the marriage, Decedent was murdered on September 1, 2021 in El Mirage, Arizona. (*Id.* ¶ 13). The Arizona Department of Health Services deemed Decedent's death a homicide. (*Id.*). On September 2, 2021, one day after Decedent was murdered, Transamerica received a beneficiary change request, dated August 28, 2021, to name Ms. Williams as the sole beneficiary, to receive 100% of the death benefit. (*Id.* ¶ 14). Transamerica was unable to verify the authenticity of Decedent's signature and thus did not execute the change. (*Id.*).

According to the Complaint, the El Mirage Police Department is apparently conducting a murder investigation into Decedent's death. (*Id.* ¶ 15). Transamerica alleges that on February 1, 2022, it spoke with the El Mirage Police Department, who stated that Mr. Retzlaff was not cleared of involvement in Decedent's death, and that Ms. Williams was the prime suspect. (*Id.*). On August 30, 2023, Detective Jason Vargas of the El Mirage Police Department advised Transamerica their investigation had not changed and they were still unable to clear Mr. Retzlaff of involvement. (*Id.* ¶ 16). And on October 10, 2023,

Detective Joe Johnston again advised Transamerica that the investigation remained ongoing. (*Id.*).

Both Mr. Retzlaff and Ms. Williams deny these allegations. (*See* Docs. 14, 16). Mr. Retzlaff's Answer contains unsubstantiated claims that (1) at the time his father was murdered, he was at home with his mother and on FaceTime with his girlfriend; (2) Ms. Williams made false accusations that Mr. Retzlaff was abusive and that Decedent hated him and was made suicidal as a result of "his family wanting his money"; (3) a few days before the murder, Decedent left Mr. Retzlaff a voicemail "wanting to see how my son is doing"; (4) Ms. Williams framed Mr. Retzlaff by telling the police that he stole Decedent's safety deposit box key; (5) Ms. Williams appeared at Decedent's home after the murder to retrieve certain items, and moved back into the home a few weeks later; (6) Ms. Williams believed Decedent was "retired and extremely wealthy" when, in reality, he was not retired and "in massive debt"; (7) Ms. Williams was committing fraud by using debit cards of deceased individuals; (8) Decedent's neighbors saw a black man crawling through Ms. Williams' bedroom window, and they were seen kissing each other; (9) Ms. Williams slept in a separate bedroom after her marriage to Decedent and would keep her bedroom door locked; and (10) the El Mirage Police Department has not initiated contact with Mr. Retzlaff. (Doc. 14 ¶ 15).

In her Answer, Ms. Williams denied the allegation regarding uncertainty about the validity of Decedent's signature on the August 28, 2021 beneficiary change request. (Doc. 16 at 2). She also denied being a prime suspect in the Decedent's murder. (*Id.*). Ms. Williams provided an email purportedly sent from Decedent to Ms. Williams on June 22, 2021 where Decedent expressed fears for his life and stated, with urgency, his intention to get married to her:

> I want to get the marriage paperwork signed and filed as soon as possible. We can do the wedding ceremony in September, if that is what you want. But I want to get the paperwork all done quickly. I don't know what the future has in store … . I worry that something might happen to me. I cannot explain it or why. So I want to make sure you are fully protected for every eventuality … .

- 3 -

(Doc. 17, Ex. E).  Ms. Williams also attached text messages purportedly sent from Decedent to Ms. Williams on August 8, 2021, where Decedent stated:

> This is just more harassment being caused by Collin.  Remember the first time?  And when that didn't work, he gets on the internet to join in and turn up the pressure.  Because he and they are all nuts.

(Doc. 17, Ex. D).  Ms. Hollas and Ms. Retzlaff, in their Answer, neither admitted nor denied the inauthenticity of Decedent's signature on the August 28, 2021 beneficiary change request form and the application of the slayer rule.  (Doc. 13 ¶¶ 14, 16).

On April 23, 2024, the Court ordered Transamerica to deposit $91,616.45 (the "Policy Benefit") and discharged it from any other proceedings in this action.  Transamerica was later dismissed from this action, and the Court expressly retained jurisdiction over the second stage of the interpleader litigation.  (Doc. 62).  Discovery closed on March 27, 2025 (Doc. 71), and Ms. Williams now brings her Motion for Summary Judgment.

**II.** **Legal Standard**

**A. Summary Judgment**

Summary judgment is granted if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The non-moving party must then point to specific facts establishing there is a genuine issue of material fact for trial.  *Id*.

At summary judgment, the Court considers only admissible evidence.  *See* Fed. R. Civ. P. 56(c)(1)(B).  When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine issue of material fact exists "if the [admissible] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.  In ruling on the motion for summary judgment, the Court will construe the evidence in the light most favorable to the non-moving party.  *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

### B. Interpleader

Rule 22 interpleader "provides a process by which a party may join all other claimants as adverse parties when their claims are such that the stakeholder may be exposed to multiple liability." *Aetna Life Insurance Co. v. Bayona,* 223 F.3d 1030, 1033 (9th Cir. 2000) (internal quotations omitted).  The purpose of an interpleader action is "to decide the validity and priority of existing claims to a res." *Texaco, Inc. v. Ponsoldt,* 118 F.3d 1367, 1369 (9th Cir. 1997).  In the second stage of an interpleader action, after the Plaintiff has deposited the disputed funds with the court, "each claimant must establish his right to the property by a preponderance of the evidence." *Island Title Corp. v. Bundy*, 488 F. Supp. 2d 1084, 1090 (D. Haw. 2007) (citation omitted).

> Claimants have the initial burden to go forward with their evidence, and they bear the risk of nonpersuasion on their claims.  Because the burden of proof rests with each claimant to establish an entitlement to the property, claimants must recover on the strength of their own claims rather than on the weakness of adverse ones.  Therefore, the failure of one claimant in an interpleader proceeding to prove his or her claim does not mean that the other claimant automatically prevails.

44B AM. JUR. 2D Interpleader § 63.

### III.   Analysis

Ms. Williams argues she is entitled to summary judgment and to the Policy Benefit in full because the beneficiary change request dated August 28, 2021 designating her as the sole beneficiary was valid and enforceable.  However, Ms. Williams has failed to provide any admissible evidence supporting this bare assertion.

First, Ms. Williams asserts the change was "made in accordance with policy terms" and "no evidence has been presented that it was forged, fraudulent, or invalid."

(Doc. 79 at 8). Because the remaining Defendants admitted to not possessing any evidence to dispute the validity of the beneficiary changes made to the Policy on June 1, 2021 and August 28, 2021 in their response to Ms. Williams' interrogatories and requests for production (Doc. 80, Ex. E), Ms. Williams asserts they have no basis to dispute the validity of the latest beneficiary change designation. (*Id.*). In the Complaint, Transamerica claimed it was "unable to verify the authenticity of the signature of the [Decedent]" and consequently did not execute the August 28, 2021 beneficiary designation change form. (Doc. 1 ¶ 14, Ex. B). All four Defendants in this matter filed claims of entitlement to the Policy Benefit with Transamerica. (Doc. 1, Exs. E (Denise Hollas); F (Brittany Retzlaff); G (Collin Retzlaff); H (Tayjalaya Williams)). Because Ms. Williams as the moving party asserts a claim to the Policy Benefit in full, she bears the burden to show a lack of forgery, fraud, or invalidity. *See* 44B AM. JUR. 2D INTERPLEADER § 63 ("[T]he failure of one claimant in an interpleader proceeding to prove his or her claim does not mean that the other claimant automatically prevails.").

In their Response to Ms. Williams' Motion for Summary Judgment, Ms. Hollas and Ms. Retzlaff failed to provide any factual assertions or evidence to support their challenge to the authenticity of Decedent's signature on the August 28, 2021 beneficiary change request.[1] While the Response may be procedurally and substantively deficient, it is not reason alone to grant a motion for summary judgment that otherwise fails to meet its burden of persuasion. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues.").

Second, Ms. Williams provides a copy of a police report from the El Mirage Police

---

[1] Ms. Retzlaff and Ms. Hollas' Response failed to comply with LRCiv 56.1(b) which requires any party opposing a motion for summary judgment to file a statement, separate from that party's memorandum of law, setting forth (1) whether the nonmoving party opposes the moving party's factual contentions and (2) any additional facts that establish a genuine issue of material fact.

Department which she alleges confirms [she] was not listed as a suspect and that she was the one who initiated a wellness check on [Decedent]." (Doc. 80 at 2). She also provides email correspondence between her and a representative of Transamerica wherein Transamerica wrote, "Our office spoke with Detective Vargas. Transamerica has made no allegations against you; for any further information, please contact the El Mirage Police Department." (Doc. 80, Ex. G). Though neither Transamerica nor any of the other Defendants provided direct evidence to implicate Ms. Williams' in the murder of Decedent, Ms. Williams has an independent burden, apart from defending slayer rule allegations, to prove Decedent's signature on the August 28, 2021 beneficiary designation change form was authentic by a preponderance of the evidence. *See Island Title Corp.*, 488 F. Supp. 2d at 1090. Ms. Williams did not provide admissible evidence to show Decedent's intent in making the beneficiary change request to designate Ms. Williams the sole beneficiary of the Policy.[2] Thus, genuine issues of material fact exist precluding summary judgment.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** Defendant Williams' Motion for Summary Judgment (Doc. 79) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant Williams' Motion for Ruling (Doc. 87) and Motion to Expedite Ruling (Doc. 89) are **DENIED**.

…

…

…

…

…

---

[2] While portions of the June 22, 2021 email purportedly sent by Decedent to Ms. Williams may be hearsay with an exception under Fed. R. Evid. 803(3), the email is not properly authenticated under Fed. R. Evid. 901. Further, it is not conclusive proof that Decedent, in "want[ing] to get the marriage paperwork signed and filed as soon as possible," also intended that 100% of the life insurance proceeds be left to Ms. Williams. And the June 22, 2021 text message from Decedent referencing "harassment being caused by Collin" also does not prove a materially disputed issue.

1 **IT IS FURTHER ORDERED** a Status Conference is set for **September 18, 2025,**
2 **at 11:00 a.m.** to discuss next steps and readiness for trial.
3 Dated this 22nd day of August, 2025.

_____
Honorable Roslyn O. Silver
Senior United States District Judge